**Opinion issued May 29, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00912-CV**

**NO. 01-23-00913-CV**

————————————

**IN THE MATTER OF J.A.F.**

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2021-01501J and 2021-01503J**

---

## MEMORANDUM OPINION

J.A.F. appeals the juvenile court's order transferring him from the Texas Juvenile Justice Department ("TJJD") to the Texas Department of Criminal Justice ("TDCJ"). J.A.F. contends the trial court abused its discretion by excluding certain testimony at the transfer hearing and determining that he should be transferred to

TDCJ to serve the remainder of his sentence, rather than released on parole, without considering all the factors in Section 54.11(k) of the Family Code. We affirm.

## I. Background

In March 2022, J.A.F., a juvenile, was adjudicated on three counts of aggravated robbery with a deadly weapon, sentenced to an eight-year determinate sentence for each robbery, and sent to TJJD to serve the sentence. About a year and a half into the sentence, with J.A.F.'s nineteenth birthday approaching, TJJD asked the juvenile court for a hearing to determine whether J.A.F. should be released on parole or transferred to TDCJ to serve the remainder of his sentence.[1]

The juvenile court conducted a transfer hearing at which TJJD recommended J.A.F. be transferred rather than paroled. During the hearing, TJJD presented testimony from its assigned court liaison and, through her, offered its "master file" pertaining to J.A.F. The master file, which was created three weeks before the hearing, contained records of J.A.F.'s participation in treatment programs, disciplinary incidents, and psychological evaluations during his time at TJJD.

The master file reflected that J.A.F. had participated in but not completed some treatment programs, including drug-and-alcohol-abuse counseling and

---

[1]  TJJD called for a transfer determination from the juvenile court because J.A.F. was adjudicated for delinquent conduct constituting a first-degree felony and had not served the minimum three years of his sentence, and therefore TJJD could not, on its own, release him under supervision without the juvenile court's approval. TEX. HUM. RES. CODE §§ 244.014(a), 245.051(c); *see also* TEX. PENAL CODE § 29.03(b).

2

aggression-replacement training. J.A.F. had thirty-three disciplinary incidents at TJJD. Most incidents involved "minor rule violations" for things like "disrupting scheduled activities (seven), horseplay (three), gang activity (three), threatening others (two), using profanity (two), and refusing to follow staff instructions (one)." But nine incidents involved "major rules violations" for assaulting other juveniles or staff. The repeated "major rules violations" resulted in referrals to the Regulation and Safety Unit, "a self-contained program for youth who exhibit behavior that is assaultive or disruptive" and "need to be removed from the general population."

A report from C.J. Quilantán, a mental health professional who evaluated J.A.F., concluded:

> [J.A.F.] has demonstrated a persistent pattern of behavior in which the basic rights of others and age-appropriate societal norms are violated. He has demonstrated a significant pattern of using weapons, coercion, as well as reckless behavior while endangering the safety of others. While at times he has demonstrated an appropriate level of behavioral control, he has also demonstrated a low level of empathy and lack of remorse. During his time in the most restrictive environment, and despite intensive interventions, [J.A.F.] has continued to engage in gang related and other antisocial behavior.

Quilantán believed J.A.F. should be transferred to TDCJ because his "continuation of problematic behaviors, his entitlement, and resistance to following even the most basic rules" made him "a risk to others in the community and within TJJD."

Through cross-examination, J.A.F. counsel's elicited testimony suggesting that J.A.F.'s progress in TJJD's treatment programs was slowed because he was

3

transferred between facilities. After being remanded to custody in March 2022, J.A.F. was held in the Harris County Detention Center for about three months while he waited for a spot at TJJD. After his initial placement in a TJJD orientation unit, he was transferred three times—sometimes due to his behavior—before being placed at the McLennan Unit a couple of months before the transfer hearing.

A case manager at the McLennan Unit, Bonnie Johnson, testified that J.A.F. had not been written-up in the two months since he arrived and had completed some programs in the days before the transfer hearing. The recently completed programs included vocational training in welding, anger-replacement training, and drug-and-alcohol-abuse counseling. Johnson recommended parole because, while under her supervision, J.A.F. had followed the rules, not shown any violence or aggression, and not engaged in behavior associated with gangs. But she declined to state affirmatively that J.A.F. would not be a danger to the community if he were released.

The other witnesses J.A.F. presented in support of his release included Dr. Priscilla Scott, a TJJD psychologist who had evaluated J.A.F. three weeks before the transfer hearing, and McKenna Shivers, J.A.F.'s ex-girlfriend who was a co-actor in the aggravated robbery. Dr. Scott opined based on J.A.F.'s behavioral and educational progress, family support, and resilient personality that he was at low risk for re-offending. Accordingly, she also recommended parole. But, like Johnson,

4

Dr. Scott declined to affirmatively state that J.A.F. would not be a danger to the community upon release.

From Shivers, J.A.F. elicited testimony that despite J.A.F. sending her threatening letters during his confinement, she would not feel unsafe if he were released. J.A.F.'s counsel attempted to examine Shivers about how the aggravated robbery occurred, but the juvenile court excluded that testimony on the State's relevance objection.

Finally, J.A.F. offered letters of recommendation from the supervisor of the drug-and-alcohol program and two correctional officers from the McLennan Unit. J.A.F. also testified, admitting that he had a "rocky" start at TJJD but things had started to turn around in the couple of months before the transfer hearing when he was transferred to the McLennan Unit. There, he felt cared for by the staff, participated in more group sessions, and almost completed his GED. J.A.F. expressed remorse for his actions and stated that he could now cope with his anger, no longer wanted to be a part of a gang, and understood how drugs might negatively impact his life. J.A.F. also expressed his wish to finish his GED and start working.

At the conclusion of the hearing, the juvenile court found that J.A.F. still needed rehabilitation and the welfare of the community required he complete his sentence at TDCJ. The juvenile court ordered J.A.F. transferred to TDCJ to serve the remainder of his sentence.

J.A.F. appealed the transfer order for each of his three sentences. The appeal from juvenile court cause number 2021-1500J was assigned to our sister court in Houston. *See J.A.F. v. State*, No. 14-23-00922-CV, 2025 WL 793579, at *1 (Tex. App.—Houston [14th Dist.] Mar. 13, 2025, no pet.) (mem. op.). The appeals from juvenile court cause numbers 2010-01501J and 2010-01503J were assigned to this Court. The issues presented by J.A.F. are the same in all three appeals. Our sister court recently affirmed the transfer order in cause number 2010-01500J. *See id.* at *4–7. As explained below, we affirm the transfer order in the remaining two causes based on the same reasoning.

## II.    Analysis

TJJD may refer a juvenile to the juvenile court for transfer to TDCJ "if (1) the juvenile's conduct 'indicates that the welfare of the community requires the transfer' and the juvenile (2) is between sixteen and nineteen years old, (3) is serving a determinate sentence, and (4) has not completed his sentence." *In re J.R.*, No. 02-23-00149-CV, 2023 WL 6631531, at *2 (Tex. App.—Fort Worth Oct. 12, 2023, no pet.) (mem. op.) (quoting TEX. HUM. RES. CODE § 244.014(a)).

The juvenile court's decision to transfer J.A.F. is reviewed for an abuse of discretion. *D.G.W. v. State*, Nos. 01-22-00697-CV & 01-22-00698-CV, 2024 WL 86501, at *3 (Tex. App.—Houston [1st Dist.] Jan. 9, 2024, pet. denied) (mem. op.); *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

6

In deciding whether to transfer J.A.F., the juvenile court could consider the following factors:

- J.A.F.'s experiences and character before and after commitment to TJJD or post-adjudication secure correctional facility;

- the nature of the penal offense that J.A.F. was found to have committed and the manner in which the offense was committed;

- J.A.F.'s ability to contribute to society;

- the protection of the victim of the offense or any member of the victim's family;

- the recommendation of TJJD;

- J.A.F.'s best interests; and

- any other factor relevant to the issue to be decided.

*See* TEX. FAM. CODE § 54.11(k).

We review the entire record to determine if the juvenile court acted arbitrarily, unreasonably, or without reference to these considerations. *See In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.). Evidence of each listed factor is not required, and a juvenile court may assign the factors different weights. *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied).

**A.    J.A.F. did not preserve his complaint about exclusion of testimony on the nature of the underlying offense under Section 54.11(k).**

In his first issue, J.A.F. argues that the juvenile court abused its discretion by excluding Shivers's testimony about how the robbery occurred and thereby failed to consider the nature of the offense as a factor under Section 54.11(k). Our sister court

concluded this issue was not preserved for appellate review because J.A.F. did not make an offer of proof on the excluded testimony, and we agree. *See J.A.F.*, 2025 WL 793579, at \*4–6.

When an appellate court finds error in the exclusion of evidence, the complaining party must show that the erroneous ruling was harmful. *See* TEX. R. APP. P. 44.1(a); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). Evidentiary error is not reversible on appeal unless it "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1); *see Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014). This usually requires the complaining party to show that the judgment turns on the excluded evidence. *City of Brownsville*, 897 S.W.2d at 753–54; *see Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) (court ordinarily will not reverse judgment when evidence in question is not controlling on material issue dispositive to case).

Here, the robbery occurred when J.A.F., two unidentified males, and Shivers invaded an apartment at gunpoint. Shivers knocked on the apartment door while J.A.F. and his co-actors remained out of sight. One of the three men who lived in the apartment recognized Shivers and let her in, locking the door behind them. As he walked away, Shivers unlocked the door. A short time later, J.A.F. and his co-actors forcefully entered the apartment with guns drawn. They assaulted the three

8

men who lived there and stole items including cash, electronics, a handgun, a vehicle, and a cat.

At the transfer hearing, J.A.F.'s counsel asked Shivers about the robbery:

Q. So on paper, it looks like there is a home invasion. It reads as if, like, there was damage done to the door, kicked down, people were held at gunpoint, pistol whipped, and then y'all took someone's pet. Is that how it went down in your opinion?

A. No.

Q. Okay. So who first made contact with the apartment?

The State objected to Shivers's testimony on relevance grounds, arguing the facts of the robbery were already adjudicated and her version of how the robbery occurred was not material to whether appellant was rehabilitated for parole. The juvenile court agreed.

In the exchange about excluding Shivers's testimony on the robbery, J.A.F.'s counsel explained the testimony was relevant because it went to the nature of the offense but did not provide an offer of proof explaining how Shivers would respond. Without a record of the substance of the evidence that was excluded, we cannot meaningfully assess whether its exclusion was erroneous or harmful. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (complaining party must make offer of proof which sets forth substance of proffered evidence to preserve error); *Akukoro v. Akukoro*, No. 01-12-01072-CV, 2013 WL 6729661, at *7 (Tex. App.— Houston [1st Dist.] Dec. 19, 2013, no pet.) (mem. op.) (evidentiary error waived

9

when excluded evidence was not preserved through offer of proof or bill of exception); *see also* TEX. R. EVID. 103(a)(2) (error may not be based on ruling which excludes evidence unless substance of evidence was made known to court by offer or was apparent from context). Accordingly, this issue is not preserved for review, and we overrule it.

**B. The juvenile court did not abuse its discretion by ordering J.A.F.'s transfer to TDCJ.**

In his second issue, J.A.F. contends the juvenile court abused its discretion by ordering his transfer to TDCJ because the transfer order does not show sufficient consideration of the Section 54.11(k) factors. Our sister court rejected this issue, and so do we. *See J.A.F.*, 2025 WL 793579, at *7.

As our sister court concluded, J.A.F.'s argument that the transfer order needed to clearly mirror the factors of Section 54.11(k) is not persuasive. *Id.* The transfer order references the guiding rules the juvenile court relied on by stating it considered "the pleadings of all parties[,] the evidence and argument of counsel, the recommendations of [TJJD], and other factors pursuant to and in full accordance with Section 54.11, Texas Family Code." And our review of whether the transfer decision was made with reference to guiding rules "is not limited to the face of the order but rather, the entire record." *Id.* (citing *In re C.D.T.*, 98 S.W.3d 280, 283 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)).

J.A.F. asserts that our sister court's observations in another case about the relevance of a juvenile's post-adjudication experience should inform our review of the record. *See In re S.S.C.*, No. 14-23-00078-CV, 2024 WL 1326092, at *3 (Tex. App.—Houston [14th Dist.] Mar. 28, 2024, no pet.) (mem. op.). In *S.S.C.*, the appellant complained that he should have been released, rather than transferred, because he was prevented by his placements from receiving TJJD's services for a significant period before the transfer hearing. *Id.* at *1, 3. The court agreed with the appellant that his experience post-adjudication was a relevant factor for the juvenile court to consider in making the transfer determination, but the court ultimately affirmed the appellant's transfer to TDCJ because other evidence supported the juvenile court's decision. *See id.* at *3–5. The same is true here. While J.A.F. presented some evidence that his progress in TJJD's programs was slowed by his placements, the juvenile court could reasonably conclude that evidence was outweighed by other evidence that J.A.F. still needed rehabilitation and the welfare of the community required he complete his sentence at TDCJ.

The evidence at the transfer hearing included the testimony of five witnesses, reports from TJJD's master file, and multiple exhibits. In addition to the evidence offering at least a partial explanation for J.A.F.'s slow progress on treatment programs, the evidence favorable to J.A.F. included testimony and letters recommending his release by his most recent case manager, mental health

11

professional, lead correctional officers of his pod, and the supervisor of his drug-and-alcohol treatment program. Additionally, J.A.F. testified about his remorse for his actions and introduced certificates of completion for vocational training, aggression-replacement training, and drug-and-alcohol counseling.

But the trial court had discretion not to weigh J.A.F.'s evidence heavily because J.A.F. had interacted with the staff at the McLennan Unit for a very short time compared to his full duration at TJJD, had changed his behavior only two months before the hearing, and had received his certificates of program completion just two days before the hearing. TJJD's master file recounted the details of J.A.F.'s aggravated robbery, including the fact that J.A.F. wielded a firearm and injured one of the complainants during the offense, that he had gang affiliations, and that he had thirty-three incident reports during his time at TJJD. These incidents included injurious and non-injurious assaults against other juveniles and staff. A previous case manager observed that J.A.F. "demonstrates a very entitled attitude" and "[h]e truly believes he does not have to follow the rules." The master file also stated that J.A.F. often refused to comply with TJJD staff directives, refused to participate in group activities, expressed racist and violent views, and was manipulative.

Because it was within the juvenile court's discretion to weigh the evidence and to believe or disbelieve the witnesses' testimony, the juvenile court reasonably could believe that J.A.F. was not genuine in his attempts to rehabilitate himself

throughout his time in the program until the hearing.  *See J.A.F.*, 2025 WL 793579, at \*7.  On this record, we hold that the juvenile court did not act arbitrarily, unreasonably, or without reference to any guiding principles in ordering J.A.F. transferred to TDCJ and that there is some evidence in the record to support its determination.  *In re N.K.M.*, 387 S.W.3d at 864.  We therefore overrule J.A.F.'s second issue on appeal.

### III.  Conclusion

We affirm the juvenile court's order transferring J.A.F. from TJJD to TDCJ.


Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.